**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION**

**TAMIKA K. HAYNES**                                                                               **PLAINTIFF**

**VS.**                           **CASE NO. 2:11CV00106  HDY**

**MICHAEL J. ASTRUE, Commissioner,
   Social Security Administration**                                                                **DEFENDANT**

**ORDER**

Plaintiff has appealed the final decision of the Commissioner of the Social Security Administration to deny her claim for disability insurance benefits (DIB) and supplemental security income (SSI).  In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  42 U.S.C. § 405(g).

This Court's review function is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *See Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000).  "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusions." *Id*. The Court may not reverse merely because evidence would have supported a contrary outcome. *See id*.

The only disputed issue in this case is whether plaintiff is disabled within the meaning of the Social Security Act.  Plaintiff bears the burden of establishing a physical or mental impairment that will result in death, or that has lasted twelve months or more and has prevented her from engaging in any substantial gainful activity.  42 U.S.C. § 423 (d)(1)(A); 42 U.S.C. § 1382c(3)(A) and (B).

Plaintiff protectively filed for SSI and DIB on March 30, 2009, alleging disability since February 5, 2009.  Her applications were denied initially and upon reconsideration, and she requested a hearing before an administrative law judge (ALJ).

Plaintiff was 31 years old at the time of the hearing, which was conducted on April 14, 2010. (Tr. 28-38).  The plaintiff, her mental health therapist, and a vocational expert testified at the hearing.  The plaintiff, who has a high school education, has past relevant work experience as a dispatcher, substitute teacher, and teacher's aide.

At the administrative hearing, the plaintiff indicated that she last worked as a dispatcher in March of 2007, leaving the job when she was laid off.  She received unemployment benefits after leaving the job. (Tr. 31).  After the benefits ended, she stated that she looked for other work.  The plaintiff and her sixteen year old son live with plaintiff's mother. (Tr. 32).  The vocational expert was asked if there were jobs available that involved an unskilled level of work and in which contact with the public would be no more than incidental to the work performed.  The vocational expert stated that the jobs of hotel housekeeper and price marker fit within the parameters of the question posed to him. (Tr. 32-33).  The plaintiff stated she could not perform these jobs due to irritability, anxiety and frustration.  She testified that her medicine is helpful "at times" but that she continues to "get real irritated real fast with people."  (Tr. 33).  Plaintiff testified to very limited daily activities, primarily staying in her room, and occasionally going to shop.  A few days before the hearing the plaintiff stated she almost got in a fight when shopping. (Tr. 34).  The plaintiff's mental health therapist also appeared at the hearing, corroborating the plaintiff's tendency to become quickly agitated with others.  This witness also noted that the plaintiff had recently been diagnosed with bipolar disorder. (Tr. 37).

On August 4, 2010, the ALJ found the plaintiff was not disabled as defined in the Social Security Act. (Tr. 11-22). The ALJ specifically found the plaintiff has the severe impairment of bipolar disorder. The ALJ found, however, that she did not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4. The ALJ found the plaintiff has the residual functional capacity to perform a full range of unskilled work at all exertional levels with the limitation that her contact with the general public must be no more than incidental to the work performed. The ALJ concluded the plaintiff was unable to perform her past relevant work. Finding that the plaintiff's ability to perform work was compromised by nonexertional impairments, the ALJ relied upon the testimony of the vocational expert to find the plaintiff capable of performing work in the national economy. As a result, the ALJ concluded that the plaintiff was not disabled. The Appeals Council, on May 26, 2011, denied plaintiff's request for review (Tr. 2-5). The Appeals Council considered additional evidence submitted by the plaintiff, noting that a treating physician had changed her diagnosis from bipolar disorder to Asperger's disorder. The Appeals Council did not accord the treating physician's opinion significant weight. The plaintiff subsequently filed suit with this Court.

The ALJ considered her impairments by way of the familiar five-step sequential evaluation process.

The first step involves a determination of whether the claimant is involved in substantial gainful activity. 20 C.F.R. § 404.1520(b). If the claimant is, benefits are denied; if not, the evaluation goes to the next step.

Step two involves a determination, based solely on the medical evidence, of whether the claimant has a severe impairment or combination of impairments. *Id.*, § 404.1520©); *see* 20 C.F.R.

§ 404.1526.  If not, benefits are denied; if so, the evaluation proceeds to the next step.

Step three involves a determination, again based solely on the medical evidence, of whether the severe impairment(s) meets or equals a listed impairment which is presumed to be disabling. *Id.*, § 404.1520(d).  If so, benefits are awarded; if not, the evaluation continues.

Step four involves a determination of whether the claimant has sufficient residual functional capacity, despite the impairment(s), to perform past work.  *Id.*, § 404.1520(e).  If so, benefits are denied; if not, the evaluation continues.

Step five involves a determination of whether the claimant is able to perform other substantial and gainful work within the economy, given claimant's age, education and work experience.  *Id.*, § 404.1520(f).  If so, benefits are denied; if not, benefits are awarded.

In support of her request for reversal, plaintiff contends the ALJ erred in the following ways: (1) in his residual functional capacity (RFC) assessment; (2) in posing a flawed hypothetical question to the vocational expert; (3) in failing to give greater weight to the evidence submitted to the Appeals Council after the administrative hearing; and (4) in assessing the plaintiff's credibility. *Pl.'s App. Br.* at 8-16.

Before addressing the claims, we note that claims one and four are necessarily related to claim two.  The hypothetical question posed to the vocational expert (claim two) was built upon the ALJ's RFC evaluation and his credibility assessment (claims one and four).  As a practical matter, claim two will be without merit if claims one and four are without merit, and claim two will be with merit if either claim one or four is meritorious.  As a result, we will consider the assertions of the plaintiff out of order, examining claim two after first considering the other claims for relief.

We first consider if substantial evidence supports the ALJ's RFC evaluation, where he found

4

the plaintiff could perform a full range of unskilled work at all exertional levels so long as the contact with the general public was no more than incidental to the work performed. In reaching this determination, the ALJ found the plaintiff's subjective complaints were not fully credible, noting that plaintiff left her last employment for reasons other than disability, that she received unemployment benefits following her departure, and that she continued to look for work. The ALJ also noted that the plaintiff's primary diagnosis had changed[1] and that there were signs of improvement in the medical records. The ALJ also noted the plaintiff testified that the medication and counseling were helpful in dealing with her irritability. Finally, the ALJ also cited the state agency physicians as support for his determination. A key feature of the RFC determination is the credibility finding of the ALJ. While the credibility evaluation is raised as a separate claim, it is necessary to address the plaintiff's credibility at this stage. The ALJ found the plaintiff's statements "concerning the intensity, persistence and limiting effects of" her symptoms were not credible to the extent that they were inconsistent with the RFC. (Tr. 20). The ALJ's credibility findings were based on many of the same factors cited in the RFC evaluation, such as the plaintiff's reason for leaving her dispatcher job, her continuing to look for employment, and the success achieved by the treatment received by the plaintiff[2]. It is significant to note that medical records were received after the ALJ's decision and reviewed by the Appeals Council. Treating physician Dr. McDonald saw the plaintiff nine times after the April 2010 administrative hearing, with seven of these appointments

---

[1] At the time of the ALJ's opinion, the plaintiff's diagnosis had changed from dysthymic disorder to bipolar disorder. After the ALJ's opinion, treating physician Dr. McDonald changed the primary diagnosis from bipolar disorder to Asperger's disorder.

[2] One factor not mentioned by the ALJ is the plaintiff's statement that she last worked in March of 2007. (Tr. 31). The plaintiff's earning history shows wages in 2008. (Tr. 111-2).

occurring after the ALJ's August 4, 2010 decision. In the notes accompanying these visits, Dr. McDonald consistently states that the plaintiff can not work due to her problems. Normally, such a statement by a treating physician would be accorded great deference. However, the notes also demonstrate that the plaintiff was not consistently compliant with the medical care directives given to her. In addition, the treating physician notes the plaintiff was attending college and generally doing well in her classes. (Tr. 362-3). As a result, the Appeals Council was correct to point out these facts, as well as noting that the plaintiff, according to Dr. McDonald's records, continued to make progress. (Tr. 3). On the whole, we find substantial evidence supports the credibility assessment of the ALJ and the Appeals Council. Given this credibility assessment, we further find the RFC evaluation of the ALJ is supported by substantial evidence. As a result, there is no merit in the first and fourth claims of the plaintiff.

The plaintiff also urges error in this case when the Appeals Council failed to give greater weight to the records submitted after the ALJ's opinion. As previously noted, these records reflect a treating physician changing his diagnosis from bipolar disorder to Asperger's disorder, and consistently opining that the plaintiff cannot work. However, this opinion does not square with the record prior to the ALJ's opinion, and the opinion is internally consistent with the plaintiff's ability to attend and function well in the college setting. The Appeals Council ably dealt with the additional evidence submitted in this case, and there is no error in this regard.

The final claim for relief is that the hypothetical question posed to the vocational expert was flawed. The foundation for the hypothetical was the RFC and credibility assessment of the ALJ. Having found no error with these evaluations, it follows that the hypothetical question was adequately phrased. This claim is without merit.

In summary, the plaintiff's arguments are without merit for the reasons stated herein. Substantial evidence supports the Commissioner's decision.

IT IS THEREFORE ORDERED that the final decision of the Commissioner is affirmed and plaintiff's complaint is dismissed with prejudice.

IT IS SO ORDERED this   18   day of January, 2012.

_____
UNITED STATES MAGISTRATE JUDGE